IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MT. PLEASANT PROPERTIES, LLC**                                    **PLAINTIFF**

V.                                             CAUSE NO. 1:23cv88TBM-RPM

**WRIGHT NATIONAL FLOOD INSURANCE COMPANY**            **DEFENDANT**

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Mt. Pleasant Properties, LLC, a Delaware limited liability company, who at all times relevant to this Complaint was the owner of the residential property located at 6717 Belle Fontaine Drive, Ocean Springs, Mississippi, and for its Complaint against the property's flood insurance underwriter, Wright National Flood Insurance Company, avers upon information and belief as follows:

### PARTIES

1.

Mt. Pleasant Properties, LLC ("MPP" and/or "Plaintiff") was at all relevant times owner of the elevated residential structure at 6717 Belle Fontaine Drive, Ocean Springs, Mississippi 39564, a location fronting the Gulf of Mexico on the Mississippi Sound, and which was covered by a policy of flood insurance underwritten through Wright National Flood Insurance Company at the time of Hurricane Zeta's landfall in October 2020.

2.

The Defendant, Wright National Flood Insurance Company ("Wright Flood" and/or "Defendant") is an underwriter acting through the authority of the National Flood Insurance Program and with its principal place of business in St. Petersburg, Florida. Wright may be served

1

with process through its registered agent, Corporation Service Company, at 109 Executive Drive, Suite 3 Madison, MS 39110.

## JURISDICTION AND VENUE

3.

This Honorable Court has jurisdiction under 28 U.S.C. § 1331 as this action involves insurance coverage which exists under the National Flood Insurance Act, 42 U.S.C. § 4001 et seq. Venue is proper in this Honorable Court as the subject insured property is located in Ocean Springs, Mississippi.

## BACKGROUND

4.

Wright Flood is a private entity authorized by the National Flood Insurance Program to participate in the "Write Your Own" program for issuing and administering policies providing flood insurance coverage to residential structures such as the subject property.

5.

At all times material hereto, Wright Flood issued and administered Policy No. 23-1150282468-10 which provided coverage for flood related losses to the property at 6717 Belle Fontaine Drive, Ocean Springs, Mississippi 39564 (the "Insured Property"). Said policy was in effect during the landfall of Hurricane Zeta on or about October 28, 2020.

6.

As a result of storm surge inundation caused by Hurricane Zeta, the Insured Property sustained significant damage due to the impact of water from tidal surge, wave action on the surface of the tidal surge, and the current flow of water within the tidal surge during both the rise and inundation of the flood waters and during the receding flood waters. (hereinafter "Flooding"). The pre-storm condition of the property is generally reflected in Exhibits "1" and "2." The post-

storm condition of the property is generally reflected in Exhibits "3-A," "3-B," "3-C" and "3-D." The damage to the property as a result of Flooding included the following:

A. Damage to the concrete retaining wall which protects the structural pilings of the residence from storm surge and wave action from the Gulf of Mexico;

B. Undermining and washout of the foundational clay/sand/dirt ("earthen material") which supports the structural pilings underneath the concrete slab;

C. Destruction, cracking, breaking and elimination of the concrete cap/slab which was placed over the foundational fill dirt, and which protected the structural pilings from erosion;

D. Destruction, washout, tearing and elimination of the fresh water service lines running from the water well which serviced the residence;

E. Washout, breakage and destruction of the electrical power lines which provided power service to the electrical pump components of the property's water well;

F. Complete destruction and elimination of the property's fresh water well and pumphouse, including the electrical draw pump, storage tank, all electrical connections and the wellhead itself; together with sand filling, inundation and loss of the riser pipe which allowed the recovery of fresh water from the aquifer beneath the residence; and

G. Accumulation of debris deposited by Flooding, as well as debris created from the storm surge destruction of the concrete retaining wall, concrete slab, pumphouse and well structures on the Insured Property.

7.

The Insured Property was elevated on treated wooden pilings which had been driven to resistance and which supported the residential structure through the physical mechanism of friction

3

between the four flat surface areas of the pilings and the foundational dirt/sand/clay and substrate earthen material located beneath the residence.

8.

The integrity of the foundational pilings is necessary to support the structural integrity of the residence.

9.

The structural integrity of the foundational pilings requires the maintenance of friction between the pilings and the earthen material into which they are driven.

10.

Elimination of the earthen material around the structures friction pilings reduces the effectiveness of the pilings and leads to their compromise.

11.

During the Flooding created by Hurricane Zeta, no less than three feet of earthen material was eliminated from the four surfaces of approximately 50% of the structural pilings which were supporting this residence.

12.

If left in the condition found after Hurricane Zeta, the subject property would have been at risk for further loss, erosion and destruction of the structural pilings and ultimately at risk for a complete loss of the residence. This risk was presented both through the continued probability of future storm surge inundation and through the natural progression of elements such as wind and rain water erosion, as well as the natural progression of erosion which had developed at this location of Belle Fontaine Beach over the preceding ten years and which had required installation of a concrete retaining wall so as to prevent the natural progression of Gulf of Mexico wave action from destroying the integrity of the structural pilings.

13.

Maintenance of the concrete retaining wall was required to maintain the structural integrity of the foundational pilings of the residence.

14.

Maintaining the top concrete cap/slab which was placed over the foundational dirt of the structure was necessary to prevent erosion from storm surge, wind, rain and other natural elements.

15.

The earthen material underneath the top slab, and behind the concrete retaining wall, was necessary to maintain the friction surfaces of the Insured Property's structural pilings.

16.

The concrete retaining wall and the concrete slab were substantially destroyed through Flooding in Hurricane Zeta on or about October 28, 2020.

17.

The accumulated debris left after Flooding of Hurricane Zeta had to be removed from the property and qualified as debris resulting from Flooding.

18.

Storm debris, trash and other material deposited on the Insured Property during the Flooding of Hurricane Zeta also qualified as debris and had to be removed from the Insured Property.

19.

The Insured Property required the drilling and installation of a new water well and the insured, MPP, installed structural pilings at a higher elevation in order to mitigate the potential effects of storm surge in the future, and also replaced the well, the well components, the pumphouse, the fresh water connections from the pumphouse to the residence and the electrical

connection to the pumphouse, all as a result of the loss of these structures during Flooding in Hurricane Zeta.

20.

In order to prevent further undermining, loss, erosion and deterioration of the earthen material needed to support the frictional pilings for the home, the insured, MPP, installed approximately 200 feet of steel sheet piling down the east and west sides of the Insured Property so as to form a continuous barrier against the effects of storm surge, Flooding, and water erosion, as this wall is used in combination with the concrete top slab and the concrete retaining wall. MPP also had installed limestone revetment and mesh filter both at the base of the retaining wall in order to prevent wave action and Flooding erosion from scouring the bottom of the retaining wall and eliminating its effectiveness.

21.

As a result of the Flooding damage from Hurricane Zeta, MPP replaced the top concrete slab and tied the concrete structure into the steel retaining wall which it installed on the east and west side of the property, and then replaced the earthen material underneath same and behind the forward retaining wall in order to patch/repair the forward retaining wall and to complete the structural integrity of the frictional pilings which supported the residential structure. A depiction of the overall repairs performed by MPP are attached as Exhibits "4-A," "4-B," "4-C," "4-D," "4-E" and "4-F."

22.

MPP paid to remove broken concrete and other debris caused by Hurricane Zeta.

23.

The subject repairs prevented compromise of the frictional pilings supporting the residential structure, which was necessary to prevent further and potentially catastrophic losses to

the National Flood Insurance Program. Specifically, the subject repairs were reasonable in scope and cost, and were reasonably calculated to prevent further losses from Flooding and to protect the structural integrity of the frictional pilings for the Insured Property.

24.

Ahead of retaining a Public Adjuster and submitting its Proof of Loss to Wright Flood, MPP provided notice of the flood loss to its insurance agent, who in turn informed Wright Flood that a claim would be submitted. In response to same, Wright Flood nominated an adjuster, Christopher Mathis of Colonial Claims.

25.

MPP provided to Wright Flood the first estimate of the damage in a Proof of Loss provided through its Public Adjuster (Ray Dobbs), dated December 23, 2020. (Exhibit "5"). Prior to MPP submitting its Proof of Loss and demand for appraisal, Wright Flood nominated Christopher Mathis with Colonial Claims as its adjuster, and MPP referred Christopher Mathis to MPP's Public Adjuster, Ray Dobbs of Dobbs Property Loss (Exhibit "6"). Mathis acknowledged same, but neither Mathis or Wright Flood cooperated with or followed through on any subsequent procedures for appraisal.

26.

On January 11, 2021, Wright Flood wrote to MPP claiming that *"To date we have not received your Proof of Loss for the covered building damages,"* and then further claimed that *"if we do not receive the signed Proof of Loss . . . in the next ten (10) days, we will be forced to deny your claim and close your file"* (Exhibit "7"). Although MPP had provided a Proof of Loss to Wright Flood previously, it resubmitted the same documents to Wright Flood and received a return receipt for the second mailing of the Proof of Loss (Exhibit "8").

27.

Wright Flood then responded to the December 23, 2020 Proof of Loss by correspondence dated February 15, 2021. In this correspondence, Wright Flood admitted that it had received the first Proof of Loss, stating, *"This will acknowledge receipt of the Sworn Building Replacement Cost Proof of Loss . . . signed and received in our office on December 23, 2020."* (Exhibit "9")

28.

Wright Flood further claimed in the February 15, 2021 correspondence that the Proof of Loss could not be accepted because it was *"not an accurate reflection of the covered damage from this flood event."*

29.

Wright Flood's February 15, 2021 correspondence corrected the misstatement and misinformation contained in Wright Flood's January 11, 2021 correspondence in which Wright Flood wrongfully claimed it had not received a signed Proof of Loss. Accordingly, the February 15, 2021 correspondence made the January 11, 2021 correspondence irrelevant, and a reasonable person would assume that the January 11, 2021 letter should be disregarded and substituted with the position taken by Wright Flood in its February 15, 2021 correspondence.

30.

Wright Flood's February 15, 2021 correspondence specifically stated, *"This is not a denial of the claim."*

31.

Wright Flood's correspondence of February 15, 2021 further referred to its adjuster estimation from November 11, 2021 which suggested a total loss of $5,726.20 with a net claim amount of $4,476.20 applying a deductible of $1,250.00. Wright Flood did not nominate an umpire or otherwise attempt to move forward with appraisal.

32.

On February 23, 2021, Wright Flood issued another correspondence which purported to be a denial of the claim, and which was based on the assumption in the January 11, 2021 correspondence which Wright Flood later rescinded in its February 15, 2021 correction. The February 23, 2021 correspondence claimed to be based on a failure to provide a Proof of Loss and stated *"We sent you a 10 day letter <u>dated January 11, 2021</u> indicating if we did not receive the signed, sworn Proof of Loss for the un-disputed amount, we would deny and close your claim."* (Exhibit "10") The February 23, 2021 correspondence did not reference Wright Flood's February 15, 2021 correspondence, and therefore, a reasonable interpretation of the February 23, 2021 correspondence was that it was in error by relying on the January 11, 2021 correspondence. To be certain, there is no way to reconcile the statements made in the January 11, 2021 correspondence with the statements made by Wright Flood in its February 15, 2021 correspondence, other than to assume the February 15, 2021 correspondence was a correction of the January 11, 2021 correspondence and rescinded the effect of same. Because the February 23, 2021 correspondence was based on the rescinded January 11, 2021 correspondence, and because Wright Flood had in fact received a Proof of Loss and had informed the insured in its corrected correspondence of February 15, 2021 that it was not a denial of the claim, a reasonable interpretation by a reasonable insured would be a reliance on the February 15, 2021 correspondence, since it is the only correspondence issued by Wright Flood which was based on correct and accurate information, and since it was patently obvious that the February 15, 2021 correspondence was correcting the misinformation in the January 11, 2021 correspondence. The January 11, 2021 correspondence was the basis of Wright Flood issuing the February 23, 2021 correspondence.

33.

In response to Wright Flood's demand for a more specific Proof of Loss, and given Wright Flood was not denying the claim, and in order to provide the most accurate reflection of the damage from the flood event, MPP funded the entire repairs as outlined above. To achieve these repairs, MPP had to locate contractors, material and labor during a shortage of same resulting from hurricane damage in the area and resulting from the COVID pandemic. These repairs included the following vendors and costs, all of which was paid prior to the final submission to Wright Flood:

| Vendor | Date | Description | Total |
|---|---|---|---|
| A. Coast Water Well Service, Inc | 03/04/2021 | Replacement of water well pump, tank and accessory | $4,237.20 |
| B. R&A Construction | 02/07/2021 | Demolition and haul off of concrete debris from failed bulkhead and slab, return 6 truckloads of fill dirt from under the house and sidings and the storm surge | $10,900.00 |
| C. R&A Construction | 04/09/2021 | Delivery and spread 188 yards of replacement fill dirt under home/around pilings | $3,680.00 |
| D. R&A Construction | 05/06/2021 | Masonry sand delivery for repair of foundational piling cap | $350.00 |
| E. R&A Construction | 05/13/2021 | Masonry sand delivery for repair of foundational piling cap | $350.00 |
| F. R&A Construction | 06/16/2021 | 300 tons of limestone revetment rock to support retainer wall on east and west side of foundational pilings | $4,387.00 |
| G. Baker Pile Driving and Site Work | 08/04/2021 | Install 180 feet of wood steel sheet piling- 90 feet to west and 90 feet to east side of foundational pilings | $66,140.23 |
| H. X- Man Construction, LLC | 03/23/2021 | Assist with concrete cutting/debris removal and reconstruction of water well house | $5,403.46 |
| I. X- Man Construction, LLC | 04/22/2021 | Water well pipe reconnection, electrical reconnection, concrete slab work and assist with spreading replacement fill dirt under slab | $2,923.73 |
| | | Total: | $98,371.62 |

10

34.

On December 22, 2022 MPP provided a revised Proof of Loss to Wright Flood setting out the aforementioned details and supporting invoices, together with 12 supporting photographs, and transmitted same by Federal Express courier, tracking no.: 770864443860, which was confirmed delivered to Wright Flood in St. Petersburg, Florida on December 27, 2022 (Exhibit "11").

35.

After being provided an objective, transparent and fully supported Proof of Loss, detailing actual expenditures and actual repairs, Wright Flood ignored the insured's correspondence. To date, Wright Flood has provided no response to the insured's December 27, 2022 letter and revised Proof of Loss.

36.

On February 14, 2023 MPP provided supplemental materials in support of the revised Proof of Loss in order to provide Wright Flood with the Federal and State permit grants for the subject work at the Insured Property and to provide Wright Flood with an additional report from MPP's consulting engineer, Simpkins & Costelli, Inc., regarding the relationship of the subject work to the support of the structural pilings for the Insured Property.

37.

Wright Flood again did not respond to MPP's correspondence of February 14, 2023, which was sent by Federal Express courier, tracking no.: 771301295778, and which was confirmed delivered to Wright on February 15, 2023. Wright Flood continues to ignore the claim and ignore correspondence to date.

38.

To date, Wright Flood has intentionally not responded to any of MPP's submissions for the actual out-of-pocket repair costs incurred as a result of Flood damage to the subject property.

11

39.

All of the incurred repairs are covered under the subject policy pursuant to the policy's Part A, Section 8(a)2 (water cisterns/filters); 15 (well water tanks and pumps); 17 (footings and foundational posts), and 17 together with 8(b) (clean up).

## CAUSES OF ACTION

40.

Wright Flood has had more than 30 days to consider the details and supporting documents from the revised Proof of Loss and has failed to provide any reason for denial of reimbursement under the subject policy and has failed to respond to request for appraisal. Wright Flood's refusal to consider the original Proof of Loss as an estimation of the damages following Hurricane Zeta was arbitrary, contrary to the guidance for adjustment of claims provided by the National Flood Insurance Program, and was done to artificially inflate the profitability of Wright Flood's underwriting program and to unfairly penalize, frustrate and harass policy holders by creating undue barriers to reimbursement of transparent, simple and objectively covered losses. While not a denial of the claim, when combined with its intentional refusal to participate in appraisal and its intentional refusal to acknowledge a revised submission of the Proof of Loss, it is the intention of Wright Flood to have the effect of frustrating policy holders to the point that they simply give up.

41.

As a result, Wright Flood is acting intentionally, with malice, and with the objective intent to harm the insured and should be assessed with penalty damages commensurate with the scope of its actions.

42.

Wright Flood is liable to the insured, MPP, for breach of contract as a result of its failure to approve the payment of insurance proceeds under the covered provisions of this subject policy,

and Wright flood has caused damages to MPP as a result of its breach. As a result of Wright's breach of contract, the insured has been damaged in the amount of $97,121.62, as well as the cost of having to bring this subject litigation.

43.

Wright Flood has engaged in negligent claims adjusting practices through: its refusal to accept the original Proof of Loss immediately following Hurricane Zeta; its refusal to participate in appraisal; its failure to maintain proper tracking service within its offices; its failure to be able to recognize, acknowledge and document materials when they are received from its insureds; its failure to provide accurate communications to its insured and instead providing conflicting and contradictory communication which are based entirely on Wright Flood's internal failures in its claims handling and communication process and are not the responsibility of an insured. Wright Flood is also negligent for its refusal to acknowledge or respond to the insured in any fashion after submission of an exact detailing of the actual repair costs resulting from storm inundation in Hurricane Zeta; and for its refusal to either approve or deny a claim; all of which falls below the standard of reasonable care for performance of adjusting of insurance claims and the reasonable standard of care provided in guidance of the National Flood Insurance Program for adjusting of flood claims. As a result of Wright Flood's negligent adjusting practices, which invoke obligations arising separate and apart from the terms of the policy itself, and which are obligations Wright Flood has independent of the Federal Government's duty to fund the payment of claims under the subject policy, the insured has been damaged in the amount of $97,121.62 together with the cost of bringing this litigation.

44.

WHEREFORE, the Plaintiff, Mt. Pleasant Properties, LLC, prays this Complaint will be deemed sufficient, and after due proceedings be had, that the Defendant, Wright National Flood

Insurance Company, be compelled to participate in appraisal of the claim, and to provide either an approval or denial of a claim in an objective and clear fashion; and alternatively, that it be held liable to the Defendant for compensatory damages for negligent adjusting practices and breach of contract in the amount of $97,121.62 and for penalty damages as considered appropriate by this Honorable Court, together with pre-judgment and post-judgment interest, attorney's fees, costs of court and all other reasonable litigation expenses, together with any general and equitable relief to which the Plaintiff is entitled.

RESPECTFULLY SUBMITTED, this the 5th day of April, 2023.

BY: *s/ John A. Scialdone*
John A. Scialdone, Esq. (MS Bar No:9524)
SCIALDONE LAW FIRM, PLLC
1319 24th Avenue
Gulfport, MS 39501
P.O. Box 4080 Gulfport, MS 39502
Telephone: (228) 822-9340
Facsimile: (228) 822-9343
Email: jscialdone@slfirmus.com
*Attorney for Mt. Pleasant Properties, LLC*